By the Court.—Freedman, J.
By the judgment in this action the separate .property of a married woman, consisting entirely of real estate held by her in her own right, is sought to be made liable for the payment of the amount, of a judgment previously recovered against her husband for a debt, which the referee found was contracted by him, but through her as his' agent, for her support and the support of her children. To sustain the decision of the referee, the plaintiff and respondent relies upon section 1 of chapter 90 of Laws of 1860, which provides, among other things, that the *338 separate property of a married woman shall not be subject to the interference or control of her husband, or liable for his debts, except such debts as may hare been contracted for the support of herself or her children, by her as Ms agent.
It certainly cannot be denied that this language is sufficiently broad to give color to the claim advanced by the plaintiff. But the proposition contained therein, to the effect that the estate of a married woman can be held liable for necessaries, which in law the husband is bound to furnish, whenever they are purchased by her in her husband’s name, and under express authority derived from him for that purpose, is of so novel and startling a character as to call for further investigation. Hecessaries purchased by a married woman are not chargeable upon her separate estate, unless, perhaps, purchased expressly on the credit of it, and charged upon it by some affirmative act on her part, sufficient in law for that purpose. If purchased by the husband for her, in his own name, he alone is liable for theny so, if he make the purchase through his son or daughter, or any other agent recognized as such by the seller for that purpose, with the exception of his wife, no one will be bold enough to assert that the agent incurs a liability which can be enforced either against the person or the property of such agent. How then could have the Legislature' intended to make the separate estate of a married woman liable for necessaries purchased by the husband, in his name and upon his credit, but through her agency, and upon that ground alone % The fact that the husband in the case at bar afterwards turned out to be insolvent, is of no importance; for if the wife’s estate can be held liable at all under this statute, the liability attaches irrespective of the solvency or insolvency of the husband; and if it can be held liable for the purchases proved to have been made in this instance, the separate estate of every married woman may be held liable for every item of family ex *339 pense, which the husband should direct, or allow the wife to supply, on his credit. • In this manner the whole btirden of family, support could be shifted from the husband to the wife, and a designing husband would thus not only be enabled to impose upon the wife burdens, from whicli the policy of the law has at all times protected her, but to destroy her separate estate, in case it is not too large to be overcome in that way. This is so contrary to the policy pursued by the law-making power of this State during the last twenty years, that I cannot believe the Legislature of I860 intended to effect any such result. The object of all legislation upon the rights of a married woman has heretofore been to shield her against the power of her husband, and against his disposition to appropriate and squander her property. It may be a question whether this object has in all cases been successfully accomplished; but that such was the object cannot be disputed. The first radical change in the common law rule that the husband, upon marriage, becomes entitled to all the personal property of the wife, and' to the rents and profits of her real property during their joint lives, but becomes liable to pay her debts and perform her contracts, was made by the passage of the acts of 1848 and 1849. Under these statutes any married woman was enabled to take and hold real as well as personal property, separate and apart from her husband, and to enjoy the same, and the 'rents, issues and profits thereof, in the same manner as if she were a single female, and to manage it either personally, or by the agency of her husband or any other person. She could even purchase a business, and the good-will belonging to the same, and carry it on for her sole benefit, although with many difficulties in this respect; for she had no capacity to make contracts at large, which were binding upon her personally, according to the general rules of law, and those who dealt with her had to run the risk of getting their pay. She could only contract a debt for her own benefit, and on *340 the credit of her separate estate, which might-be enforced in equity, but in no event could her property .be held liable for the debts of her husband. The statute protected it against such liability in express terms.
The act of 1860 is more comprehensive than those which preceded it. It confirms her title to her separate property, in stronger terms than those used in the previous acts. It preserves her previous powers in respect to her separate estate. In addition thereto, express authority is conferred upon her to bargain, sell, assign and transfer her separate personal property, to carry on any trade or business, and perform any labor or services, on her sole and separate account; and the act makes her earnings from her trade, business, labor or services, her,sole and separate property, and enables her to use or invest the same in her own name. The power thus conferred to carry on a trade or business includes the ability to make bargains and contracts in relation to it, in almost any mode known to the law,, and according to the practice of the commercial community ; and such bargains and contracts have been held valid against her, notwithstanding her coverture, provided they were made in the regular course of trade or business, and as an incident to it. By the act of 1862 the remaining common law disabilities of a married woman were still further reduced. Thus it seems to have been the settled policy of the law-making power to render the wife, in respect to her separate property, as independent of the husband as the welfare of society generally, in the judgment of the legislature, permitted. The intention of the legislature in passing the first so-called married women’s act, may be sufficiently gathered from the title of said act, which recites that it is an act for the more effectual protection of the property of married women ; and the fact that all subsequent acts of a similar character were made with the same intent, most clearly appears from the general language thereof.
In view of this general legislative intent, which thus *341 manifests itself throughout, and in view of the fact that, under.the acts of 1848 and 1849, the courts at all times were cautious and guarded in their action, and scrupulously protected the rights of married women as to their estates, even against their own acts (see Coakley v. Chamberlain, 8 Abb. Pr. N. S., 37). I am satisfied that when the legislature did pass the act of 1860, they did not mean to enact that the separate estate of a wife should be made liable for the debts of the husband, contracted for necessaries, by her as his agent.
I incline to the opinion, that it was their intention to make the concluding portion of section 1 of said act read, that the said separate property “ shall not be subject to the interference or control of her husband, or liable for his debts, except such as may have been contracted for the support of herself or her children by him as her agent,” and that an unintentional transposition of the words “him” and “hez-,” azzd a subsequent transformation of the word “him” into “his” took place. If the statute can be thus construed, it is within the power of the courts to bring it into harmony with the other provisions of law defining and regulating the rights and liabilities of husbazzd and wife, and whatever objectiozzs might still be made as to the propriety or expediency of its enactznezzt in the form suggested, could be left to be addressed exclusively to the power which is responsible for the creation of the entire statute. But although it has been determined that the acts for the more effectual protection of the property of married women are reznedial statutes, and that as such they demand a liberal construction to carry into effect the beneficent intent of the legislature, z’egardless of the strict letter of the law itself, I ezitertain serious doubt as to my power, as well as to the propriety, of adopting a construction which demands a reversal of the very words used by the legislature upozi the point referred to ; and inasmuch as I find, upozi examination of the facts of the case, that justice may be done without *342 resort to such construction, I shall content myself with the foregoing expression of my views.
I think it is but just and fair to hold, that "before the plaintiff can insist upon a liability heretofore unknown and unrecognized even by the moral law, but created solely by statute, against the estate of the defendant, he must bring himself within the strict letter of the statute. The facts, as found by the referee, show that the husband of the defendant has not, at any time during the marriage, neglected or refused to support the defendant or his children by her ; that all the articles purchased of the plaintiff, for which the plaintiff first had judgment against the husband, were articles for general family use; that the family consisted of the defendant, her husband and children, and one boarder; that the said articles were consumed generally by the family thus described, and a part of them were so consumed by the husband and boarder during the absence of the defendant and her children from home, which absence lasted from four to six weeks. These findings tend to show, as the evidence in the case conclusively does, that it was the husband who kept the house; if the purchases were made by the wife as the agent of the husband, the payment of board to the wife must be deemed a payment to the authorized agent of the husband ; and as the husband and boarder participated in the consumption of the articles, it cannot be truly said that the debt was contracted by the husband for the support of the defendant or her children. To entitle the plaintiff to a recovery, he was at least bound to show that the debt was -contracted by the husband for the exclusive support of the defendant or her children. Another objection, which seems to me fatal, is, that the debt of the husband became merged in the judgment which plaintiff recovered against-him, with costs of suit.
I am of the opinion, therefore, that upon the facts, as found, the referee’s conclusions of law and direction for judgment are erroneous ; that the judgment appealed *343 from should be reversed, the order of reference vacated, and a new trial granted, with costs to appellant, to abide the event.
Barbour, Ch. J., and Monell, J., concurred.